863 A.2d 443  
--- A.2d ----, 863 A.2d 443  
(Cite as: 863 A.2d 443, 2004 WL 2951992 (Pa.))  
H

Page 1

Briefs and Other Related Documents

Supreme Court of Pennsylvania.  
WITCO CORPORATION, Appellant  
v.  
HERZOG BROTHERS TRUCKING, INC., Appellee  
v.  
National City Bank, Appellee.

Argued May 11, 2004.  
Decided Dec. 21, 2004.

Background: Default judgment creditor brought action against garnishee bank to compel payment, alleging that bank "possessed" debtor's funds and that bank had duty to hold funds for creditor. On appeal from grant of summary judgment for bank at No. 20 WM 2003, the United States Court of Appeals for the Third Circuit certified questions to the Pennsylvania Supreme Court.

Holdings: The Supreme Court, No. 2 WAP 2004, Castille, J., held that:  
(1) bank had possession of debtor's funds when debtor physically provided bank's teller with cash and personal checks in exchange for purchase of cashiers' checks;  
(2) duty to refrain from paying debts to or on account of judgment debtor is not negated by a transaction that is brief in duration; and  
(3) state public policy prohibits a garnishee bank with notice of a judgment order from engaging in transactions with the judgment debtor that it knows or should know will facilitate the judgment debtor in attempts to avoid the lawful garnishment of its assets.

Questions answered.

Cappy, C.J., dissented with opinion.

West Headnotes

[1] Garnishment ⟺ 56  
189k56 Most Cited Cases  
Bank had possession of judgment debtor's funds for purposes of garnishment statute when debtor physically provided bank's teller with cash and personal checks in exchange for purchase of 131 cashiers' checks, even though funds were never deposited into debtor's account at bank. Rules Civ.Proc., Rule 3101(b), 42 Pa.C.S.A.

[2] Garnishment ⟺ 116  
189k116 Most Cited Cases  
The duty imposed by the garnishment rule regarding writ of execution, to refrain from paying debts to or on account of the judgment debtor, is not negated by a transaction that is brief in duration. Rules Civ.Proc., Rule 3111(c), 42 Pa.C.S.A.

[3] Garnishment ⟺ 110  
189k110 Most Cited Cases  
The public policy of Pennsylvania prohibits a garnishee bank with notice of a judgment order from engaging in transactions with the judgment debtor that it knows or should know will facilitate the judgment debtor in attempts to avoid the lawful garnishment of its assets. Rules Civ.Proc., Rule 3111(c), 42 Pa.C.S.A.

*444 David Vernon Weicht, for Witco Corp., appellant.

C. James Zeszutek, Lori L. Breen, Pittsburgh, for Nat. City Bank, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

*OPINION OF THE COURT*

Justice CASTILLE.

**1 This matter comes before this Court on a Petition for Certification of Questions of Law from the United States Court of Appeals for the Third Circuit. This Court granted the petition, which raises three questions: (1) whether a drawee bank obtains "possession" of any property, as defined by Pa.R.C.P. 3101, of a customer who physically provides the drawee bank's teller with cash and checks, in exchange for the issuance of a bank cashier's check, when those funds are never deposited into the customer's account at the drawee bank; (2) whether a garnishee bank, which receives "possession" of the property of a judgment debtor after being served with a writ of execution, has a duty under Pa.R.C.P. 3111(c) "restraining [it] from paying any debt" to that judgment debtor in exchange for that property, even if that " debt"

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT  
B

863 A.2d 443  
(Cite as: 863 A.2d 443, *444, 2004 WL 2951992, **1 (Pa.))

Page 2

arises during a transaction with a brief duration akin to that of a sales transaction; and (3) whether the public policy underlying Pennsylvania garnishment law requires a garnishee bank, on notice of a judgment order against a depositor by Writ of Execution and whose accounts are thereby held, to refrain from engaging in transactions with that judgment debtor which permit the judgment debtor to avoid the garnishment of its assets, and thereby the debtor's obligation to pay its judgment creditor, to the financial benefit of the garnishee bank.

The salient facts are undisputed. Appellee, Herzog Brothers Trucking Inc. (Herzog Brothers), is a wholesale distributor of motor fuel products. On June 5, 1996, in an unrelated action, appellant, Witco Corporation (Witco), obtained a default judgment against Herzog Brothers in the amount of $509,216.52 plus costs in the United States District Court for the Western District of Pennsylvania. On July 5, 1996, in an effort to collect the judgment, Witco served a writ of execution upon National City Bank of Pennsylvania (Bank) as potential garnishee. In response to interrogatories from Witco, the Bank indicated that it held and had frozen $1,379.52 in a checking account belonging to Herzog Brothers.

Witco deposed Gary Herzog, Herzog Brother's president and sole shareholder, who testified that subsequent to the service of the writ of execution upon the Bank but before entry of judgment against the Bank, a period spanning from July 5, 1996 to August 11, 1997, Herzog Brothers purchased at least 131 cashiers' checks from the Bank, using personal checks and cash. As to each purchase of a cashier's check, Herzog presented his personal checks or cash to the Bank at the teller windows whereupon the Bank would issue "official checks" drawn on the Bank and payable to *445 various designees specified by Herzog. The aggregate value of these checks exceeds $6,000,000. During the same time period, the Bank made fourteen payments to itself totaling $22,718.86 from funds presented to the Bank's tellers by Herzog in the form of personal checks or cash. [FN1] The Bank's own internal policy required that all funds used for the issuance of "official checks" in an amount in excess of $3,000 first be deposited into an account at the Bank. The Bank also customarily placed a hold on funds from foreign bank checks in order to verify that the accounts on which the checks were drawn contained sufficient funds to cover the checks. Both of these policies were waived in the Bank's dealings with Gary Herzog and Herzog Brothers. [FN2]

> FN1. The Third Circuit noted that these payments to the Bank appeared to be mostly regular monthly payments in set amounts: $876.20 per month from November 1996 to February 1997, except a December 1996 payment in the amount of $1,314.20; $601.20 per month from March to July 1997, except a June 1997 payment in the amount of $901.90; and one lump sum payment of $15,000 on September 5, 1996.

> FN2. The Bank claims that these policies were waived for Herzog Brothers long before the garnishment proceedings began.

**2 Following Gary Herzog's deposition, Witco filed in the district court a motion to compel payment by the Bank, contending that the Bank "possessed" Herzog Brothers' funds and that the Bank had a duty to hold those funds for Witco. Finding that Pennsylvania law dictates that interrogatories in aid of execution be treated as though they were a complaint and the garnishee's answers to the interrogatories as an answer to the complaint (Pa.R.C.P. 3145(a)), and that the parties had conducted discovery in aid of execution, the district court treated Witco's motion and the Bank's response as cross-motions for summary judgment, noting that the parties agreed that there existed no genuine issues of material fact. The district court then denied Witco's motion for summary judgment and granted the Bank's motion. Ruling on the narrow issue of whether the Bank came into possession, as that term is defined in Pa.R.C.P. 3101(b), of the Herzog Brothers' property during the cashier's check transactions, the district court likened the transactions to any sales transaction where the purchaser tenders full payment at the time of the sale. Because Gary Herzog never deposited his cash or personal checks in the Bank as part of the cashier's check purchases, the court found as a matter of law that the Bank never came into possession of Herzog Brothers' property. Witco appealed to the Third Circuit, which determined that the district court's decision raised significant questions of Pennsylvania law not previously decided by this Court and, in turn, certified those questions to this Court for resolution.

[1] The first question for this Court's consideration

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



863 A.2d 443
(Cite as: 863 A.2d 443, *445, 2004 WL 2951992, **2 (Pa.))

Page 3

is whether a drawee bank obtains "possession" of any property, as defined by Pa.R.C.P. 3101, of a customer who physically provides the drawee bank's teller with cash and checks, in exchange for the issuance of a cashier's check, when those funds are never deposited into the customer's account at the drawee bank. Our inquiry necessarily begins with Rule 3101(b) which, for purposes of "enforcement of money judgments for the payment of money," defines a garnishee as follows:

(b) Any person may be a garnishee and shall be deemed to have possession of property of the defendant if the person
(1) owes a debt to the defendant;
(2) has property of the defendant in his or her custody, possession or control; ...
*446 (3) holds as fiduciary property in which the defendant has an interest;
(4) holds the legal title to property of the defendant whether or not in fraud of creditors; or
(5) owns or possesses real property subject to a mortgage, judgment or other lien in which [the] defendant has an interest.

Id. For purposes of this Rule, " 'defendant' means any party against whom a judgment has been entered." Id., Rule 3101(a).

The Rule does not define "possession" for purposes of garnishment, and neither the parties nor the district court cite to any authority from Pennsylvania or any other jurisdiction bearing on the issue presented here. [FN3] Nor did our research uncover any case law directly on point. The Bank argues that this Court should adopt the district court's reasoning that the cashier's check purchases amounted to nothing more than sales transactions in which Herzog Brothers purchased a series of checks from the Bank, but the Bank did not acquire custody or control of any Herzog Brothers property. Witco, on the other hand, urges a plain language interpretation of Rule 3101, conferring on the word "possession" its common and approved usage in accordance with Pa.R.C.P. 103(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage"). We agree with Witco that a plain language approach is required in this instance.

FN3. The Bank devotes substantial argument to defining a cashier's check as a cash equivalent. This argument begs the question presented here--whether the Bank had possession of Herzog Brothers' property during the transaction that culminated in the issuance of the cashier's checks.

**3 Rule 3101(b) unambiguously provides that a garnishee is deemed to be in possession of property of the defendant if the garnishee "has property of the defendant in his or her custody, possession or control." Black's Law Dictionary (8th Ed. 2004) defines possession as: "The fact of having or holding property in one's power; the exercise of dominion over property." Here, when Herzog Brothers purchased 131 cashiers' checks from the Bank, the Bank came into physical possession of the personal checks and cash proffered by Gary Herzog. [FN4] The Bank then had the power to control Herzog Brothers' access to those funds and the manner in which the funds were disbursed. Indeed, pursuant to its ordinary business policies, the Bank had the power to hold the checks Gary Herzog presented until it determined that sufficient funds existed in the banks upon which the checks were drawn before making the funds available to Herzog Brothers. In addition, the Bank's internal policy provided that funds for a cashier's check in excess of $3,000 were to be deposited into an account with the Bank prior to issuance of the cashier's check. That the Bank chose in the case of this particular customer/ judgment debtor not to follow its usual practices, and thereby declined to hold the checks or require that the funds be deposited in a Herzog Brothers' account, does not negate that the Bank had those powers over the funds--powers which derived from the fact that they were in possession of the funds, if only for a brief time. Thus, applying the common and approved definition of the term "possession," we conclude that the Bank was in possession of the checks and cash once Herzog handed them over to the Bank's tellers, for purposes of Rule 3101(b), notwithstanding *447 that Herzog did not formally deposit the funds into Herzog Brothers' account with the Bank.

FN4. There appears to be no dispute that the personal checks and cash employed by Gary Herzog to buy the bank cashiers' checks represented property belonging to Herzog Brothers.

[2] Having found that the Bank indeed had possession of Herzog Brothers' property, we turn to the second certified question--whether a garnishee bank, which receives "possession" of the property of a judgment debtor after being served with a writ of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



863 A.2d 443
(Cite as: 863 A.2d 443, *447, 2004 WL 2951992, **3 (Pa.))

Page 4

execution, has a duty under Pa.R.C.P. 3111(c) "restraining [it] from paying any debt" to that judgment debtor in exchange for that property, even if that "debt" arises during a transaction with a brief duration akin to that of a sales transaction. Rule 3111(c) states:

(c) Service of the writ upon the garnishee shall also subject the garnishee to the mandate and injunctive orders of the writ restraining the garnishee from paying any debt to or for the account of the defendant and from delivering any property of the defendant which may be attached under these rules to anyone except the sheriff or otherwise disposing thereof until further order of the court or discontinuance or termination of the attachment.

Witco argues that, by its plain language, Rule 3111(c) imposes a duty upon the garnishee to restrain from paying any debt to or on behalf of the judgment debtor, and that the duration of the transaction is irrelevant. Because "debt" is not defined in the Rules of Civil Procedure, Witco urges that "debt" be defined according to its common and approved usage. See Pa.R.C.P. 103(a). Witco then cites the Superior Court's decision in *Prevish v. Northwest Medical Center Oil City Campus,* 692 A.2d 192 (Pa.Super.1997) *aff'd,* 553 Pa. 73, 717 A.2d 1023 (1998) (per curiam), where that court endeavored to define "debt" as it relates to the Probate Code, 20 Pa.C.S. § 101 *et seq.* Because "debt" is not defined in the definitional section of the Probate Code, the court looked to the default statutory definitions found in the Statutory Construction Act, 1 Pa.C.S. ] 1501 *et seq.,* which define " debtor" as "[o]ne who owes to another the performance of an obligation." 1 Pa.C.S. § 1991. Extrapolating from the statutory definition of "debtor," the court defined debt as "an obligation the performance of which is owed to another." *Prevish,* 692 A.2d at 199.

**4 Witco argues that, applying this logical definition of debt to the controversy at hand, upon receipt of the cash or checks from Gary Herzog, a performance obligation arose whereby the Bank was obliged to perform some act with regards to Herzog Brothers funds. In this case, the Bank fulfilled that obligation by issuing the cashiers checks. The act of issuing the cashiers checks, according to Witco, constituted the payment of a debt to Herzog Brothers, an act prohibited by Rule 3111(c). In the alternative, Witco argues that the issuance of the cashiers checks to third parties identified by Gary Herzog amounted to a payment of debts for the account of Herzog Brothers in violation of Rule 3111(c).

As to the brief duration of the transactions and the Bank's possession of Herzog Brothers' funds, Witco contends that duration is not a relevant factor, pointing in support to *In re Southwestern Glass Co.,* 332 F.3d 513 (8th Cir.2003). There, the Eighth Circuit Court of Appeals discussed the obligations of a garnishee bank after it has been served with a writ of garnishment. Subsequent to being served with a writ of garnishment, the garnishee bank in that case continued to honor checks drawn on a loan manager account belonging to the judgment debtor where the account maintained a zero balance and was funded through a line of credit the debtor maintained with the bank. Whenever checks drawn on the account were presented to *448 the bank, the bank immediately funded the account in the amount of the check presented and then disbursed the funds to the payee. The transfer of funds from the line of credit to the loan manager account and then payment to the payee were instantaneous; the funds remained in the loan manager account for only a brief time. On these facts, the bank maintained that it never had possession of funds belonging to the judgment debtor due to the brief duration of the transactions. The Eight Circuit disagreed, holding that: "the proceeds from [the debtor]'s line of credit transferred into the loan manager account became money or credits belonging to [the debtor] for the brief period of time between the transfer of the proceeds to the account and disbursement of the proceeds to the payee." *Id.* at 518.

The Bank counters that Herzog Brothers' ongoing purchases of cashier's checks were merely over-the-counter exchanges in which the Bank served as a financial intermediary. In the Bank's view, Gary Herzog provided the funds to the Bank's tellers in exchange for the cashier's checks without any intention of depositing the funds or of giving the funds to the Bank to hold. Nor did Herzog Brothers intend that the funds be used to pay a debt on its behalf. The Bank argues that Witco's characterization of these exchanges of funds for cashier's check as giving rise to a debt is untenable and not supported by authority. Further, the Bank submits that this characterization would turn every purchase and sale transaction into a debt subject to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



garnishment. The Bank also argues that, had it acted as Witco claims it should have by seizing the cash and checks Gary Herzog presented to the Bank's tellers and turning those funds over to Witco, its conduct would have been actionable, unethical, legally and constitutionally questionable and commercially unreasonable. Finally, the Bank distinguishes *Southwestern Glass* on the basis that the funds in question here were never actually deposited in an account belonging to Herzog Brothers.

**5 We do not accept the Bank's characterization of the cashier's check transactions with its judgment debtor customer in this case as akin to other innocent purchases and sales transactions. What obviously separates the situation *sub judice* from other everyday sales transactions is that the Bank maintained a banking relationship with Herzog Brothers and had been served with a writ of execution precisely because of that banking relationship. The nature of the relationship renders the Bank's conduct in waiving its usual policy and issuing no-delay cashier's checks in exchange for cash and personal checks tendered by its apparently-preferred customer suspect. Even if it was not the Bank's specific intent, it appears that the Bank engaged with Herzog Brothers in transactions patently calculated to thwart the garnishment process. It is undisputed that the Bank was aware of the judgment against Herzog Brothers and had been served with a writ of execution. Nevertheless, over the course of thirteen months, the Bank processed more than $6 million in cash and checks exchanged for at least 131 of the Bank's cashier's checks--without any consideration for its lawfully imposed duty as garnishee. In light of these facts, we reject the notion that the conduct at issue amounted to a series of simple, innocent sales transactions having nothing to do with the Bank's relationship with its customer as an account holder whose account was subject to garnishment.

We should note, however, that we do not accept Witco's broad argument that the presentation of the cash and checks to the Bank's tellers gave rise to a debt owed by the Bank to Herzog Brothers. This *449 strained interpretation of the word "debt" could conceivably capture any wholesale or retail sales transaction. In any case, there is no need to concern ourselves with the issue because it seems crystal clear that, when the Bank converted Herzog Brothers' cash and checks into cashier's checks and made those cashier's checks payable to third parties or to the Bank itself at Herzog Brothers' direction, the Bank was paying debts on account of Herzog Brothers. The Bank's conduct implicates and runs afoul of Rule 3111(c). This is particularly true in the case of checks used by Herzog Brothers to fund the cashier's checks where the checks were drawn on foreign banks. In those instances, the Bank issued the cashier's checks with no knowledge of whether sufficient funds existed to cover the checks in the foreign banks; therefore, the Bank was essentially advancing bank funds to Herzog Brothers and then using those funds to pay debts on behalf of Herzog Brothers.

We agree with Witco, however, that the Eighth Circuit's reasoning in *Southwestern Glass,* to the effect that the duration of the transaction is not pertinent, is persuasive and should apply to similar situations arising under Pennsylvania law. Although the funds in *Southwestern Glass* were actually deposited into an account managed by the debtor, the deposit and subsequent disbursement of the funds took place within a very brief time period. In fact, the deposits were made at the moment when a check drawn on the account was presented to the bank. Therefore, the deposit and disbursal were practically simultaneous, much like the transactions at issue here. The Bank is correct that the funds in this case were never technically deposited into Herzog Brothers' account at the Bank. However, the Bank did take possession of Herzog Brothers' property, albeit briefly, and, like the bank in *Southwestern Glass,* this brief possession obligated the Bank to hold the funds for Witco in accordance with Rule 3111(c). Thus, in answer to the second question posed by the Third Circuit, we hold that the duty imposed by Rule 3111(c) to refrain from paying debts to or on account of the judgment debtor is not negated by a transaction that is brief in duration.

**6 [3] Turning to the third certified question, this Court is asked to consider whether the public policy underlying Pennsylvania garnishment law requires a garnishee bank, on notice of a judgment order against a depositor by a Writ of Execution and whose accounts are thereby held, to refrain from engaging in transactions with that judgment debtor which permit the judgment debtor to avoid the garnishment of its assets, and thereby the debtor's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



863 A.2d 443
(Cite as: 863 A.2d 443, *449, 2004 WL 2951992, **6 (Pa.))

Page 6

obligation to pay the judgment creditor, to the financial benefit of the garnishee bank.

The Bank argues that Pennsylvania garnishment law does not require a financial institution to join in a judgment creditor's hunt for assets or in the creditor's efforts to drive a judgment debtor out of business. [FN5] The Bank further asserts that garnishment rules are not designed "to relegate a judgment debtor to a financial leper *450 colony" until payment of the judgment. Brief of Appellee at 23. The Bank posits that, in this case, Herzog Brothers could have purchased money orders at a convenience store and accomplished the same result with no questions arising as to whether the convenience store should have issued the money orders and that requiring the convenience store to cease all contact, including sales transactions, goes beyond the purpose of the garnishment rules. The Bank thus posits that its activities in this case are indistinguishable from those of a convenience store selling money orders to anonymous customers. Therefore, in the Bank's view, neither the garnishment rules themselves nor public policy should be construed to prohibit the sales of cashier's checks that occurred here.

> FN5. Implicit in the Bank's argument is the suggestion that, had Herzog Brothers been forced to pay Witco the amount of the judgment, Herzog Brothers would not have been able to operate its business. Nothing in the record supports this assertion, and indeed, it appears that the assertion is suspect. In little more than a year, the Bank processed more than $6 million of Herzog Brothers' funds through the issuance of cashier's checks. Thus, the amount of Witco's judgment ($509,216.52) represents approximately 8% of the funds the Bank processed for its customer in slightly more than one year. Nothing in the record facts supports an assertion that honoring the writ of execution would have driven Herzog Brothers out of business.

Witco responds that public policy should prohibit actions which, whether so intended or not, appear designed to avoid a valid writ of execution. Witco argues that the Bank's conduct clearly violated both the letter and spirit of the garnishment rules, ultimately permitting Herzog Brothers to avoid execution of the lawfully obtained judgment against it. The Bank here clearly provided Herzog Brothers with all the benefits of a bank account while assisting Herzog Brothers in avoiding the seizure of their assets, which was required pursuant to the writ of execution. Witco asserts that if this Court permits this type of activity in garnishment cases, the ability of creditors to collect judgments will be severely diminished. Witco is correct.

The Bank in this case was not a convenience store engaged in the innocent sale of money orders to a walk-in customer with whom it had no prior relationship. To argue that the Bank had no more obligation to Witco than a convenience store would have to a walk-in customer is fatuous on the facts of this case. Again, Herzog Brothers and the Bank enjoyed an ongoing commercial banking relationship that predated Witco's garnishment proceedings. The Bank was served with a writ of execution relative to Herzog Brothers precisely because of its status as Herzog Brothers' banker. Therefore, the Bank was fully aware of the judgment against Herzog Brothers and of its obligation to safeguard Herzog Brothers' assets currently in the Bank's possession and those that subsequently came into the Bank's possession. The Bank failed to do so, instead acquiescing in a course of conduct that treated Herzog Brothers differently than other customers, and essentially allowed Herzog Brothers to exchange its assets without exposing them to garnishment. The Bank thus permitted Herzog Brothers to continue a banking relationship without requiring them to actually deposit money into any of Herzog Brothers' garnished accounts. This arrangement benefited the Bank as well as Herzog Brothers, to the tune of over $22,000 in little more than a year. See note 1 supra.

**7 It is essential to remember that this third question arises under the rubric of public policy. In assessing and weighing such considerations, this Court will not turn a blind eye to the obvious effects of the conduct at issue. It is plain that the Bank and Herzog Brothers engaged in an extended course of conduct that permitted Herzog Brothers to avoid garnishment of its assets. Whether it was the Bank's and/or Herzog Brothers' deliberate intent to subvert the writ of execution and subsequent garnishment obligation matters less than the fact that such was clearly the result. By using cashier's checks instead of checks drawn on its own accounts, Herzog Brothers successfully processed more than $6 million dollars of its funds and used those funds to pay its obligations to creditors other than Witco

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



863 A.2d 443  
(Cite as: 863 A.2d 443, *450, 2004 WL 2951992, **7 (Pa.))

Page 7

without depositing one penny of those funds into its accounts with the Bank. The Bank permitted *451 this conduct and even derived its own financial benefit, making the Bank a player in this activity, not an innocent bystander. Were this Court to sanction this type of conduct on grounds of "public policy," we would, as Witco argues, be placing a stranglehold on judgment creditors in their efforts to collect judgments. In addition, we would be giving carte blanche to judgment debtors who are sharp enough in their business dealings to devise creative methods to avoid collection of valid judgments obtained lawfully against them. Such a course is clearly not within the spirit or intent of the garnishment rules, and we will not allow conduct that so eviscerates that spirit and intent, under the guise of enforcing some other public policy.

Thus, our answer to the Third Circuit's final certified question is simply this: the public policy of Pennsylvania prohibits a garnishee bank with notice of a judgment order from engaging in transactions with the judgment debtor that it knows or should know will facilitate the judgment debtor in attempts to avoid the lawful garnishment of its assets.

Questions answered. Jurisdiction relinquished.

Chief Justice CAPPY files a dissenting opinion.

Chief Justice CAPPY dissenting.

I do not agree that pursuant to Pa.R.C.P. 3101(b), a garnishee bank obtains "possession" of a defendant's [FN1] property when a bank sells a cashier's check to a defendant purchaser. Therefore, a bank does not violate any duty imposed upon it pursuant to Pa.R.C.P. 3111(c) by engaging in such a transaction. Lastly, I find that the public policy underlying Pennsylvania garnishment law is not offended when a garnishee bank sells a cashier's check to a defendant purchaser. Accordingly, I respectfully dissent.

> FN1. Pennsylvania Rule of Civil Procedure 3101(a) defines "defendant" as "any party against whom a judgment has been entered."

I begin by noting that in this matter, the United States Court of Appeals for the Third Circuit has asked this Court to answer three complex questions of law concerning the interpretation of our rules of civil procedure and this Commonwealth's public policy. In answering the questions raised by the Court of Appeals for the Third Circuit, the Majority places great weight and emphasis on the facts of this case, particularly the fact that, in dealing with Herzog Brothers, National City waived its internal policies regarding the issuance of cashier's checks. At the time of these challenged transactions, before a National City bank issued a cashier's check, National City's policies required that all funds to be used toward the issuance of a cashier's check in excess of $3,000 first be deposited into an account at the bank and that a hold be put on all funds derived from foreign bank checks to verify that those accounts contained a sufficient balance to cover those funds. However, when a purchaser buys a cashier's check in Pennsylvania, the law governing such a transaction does not require the bank to deposit the purchaser's funds into an account at the bank prior to the bank issuing a cashier's check nor does the law require a bank to hold funds derived from foreign checks in such scenarios. Moreover, National City's decision to waive its internal policies was not illegal and, therefore, was a choice that the bank was free to make. As such, the fact that National City waived its internal policies in dealing with Herzog Brothers is irrelevant to an *452 analysis of the questions posed by the Third Circuit.

**8 By answering the Third Circuit's far reaching legal questions based primarily on the facts of the case *sub judice,* in my view, the Majority simply has sought to do equity. The answers to these questions, however, require an analysis driven by the law, not by the facts. Consequently, a dispassionate legal analysis must answer these important questions of first impression.

Turning to the rules of construction that govern the interpretation of the Pennsylvania Rules of Civil Procedure, "[t]he object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court." Pa.R.C.P. 127(a). Furthermore, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases ... [that] have acquired a peculiar and appropriate meaning or as are expressly defined by rule shall be construed according to such peculiar and appropriate or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



863 A.2d 443
(Cite as: 863 A.2d 443, *452, 2004 WL 2951992, **8 (Pa.))

Page 8

express meaning or definition." Pa.R.C.P. 103(a). Additionally, when ascertaining the intent of this Court, it is presumed that in promulgating rules, we do not intend a result that is absurd, that is impossible of execution, or that is unreasonable. Pa.R.C.P. 128(a). With these rules in mind, I consider the questions raised in this matter.

Pennsylvania Rule of Civil Procedure 3101(b)(2) states that a garnishee "shall be deemed to have possession of property of the defendant if the [garnishee] ... has property of the defendant in his or her custody, possession or control." However, neither Rule 3101(b)(2) or any other rule of civil procedure defines "possession." In construing "possession" as it is utilized in this context, the Majority defines the word as" [t]he fact of having or holding property in one's power; the exercise of dominion over property." Majority Opinion at 633, 863 A.2d at 446 (citing Black's Law Dictionary (8th Ed. 2004)). I find this definition to be adequate in regard to garnishment law. I, however, disagree with the Majority that, under this definition, a bank possesses the property of a purchaser by engaging in the sale of a cashier's check.

Pursuant to 13 Pa.C.S. § 3104, a "cashier's check" is defined as "a draft with respect to which the drawer and drawee are the same bank or branches of the same bank." This simply means that when a customer purchases a cashier's check, the issuing bank draws the check from the bank's own account. As such, a cashier's check is the bank's obligation rather than the purchaser's personal obligation. Douglas J. Landy, *Failure of Consideration is Not a Defense to a Bank's Refusal to Pay a Cashier's Check: Revised UCC § 3-411(c)*, 115 Banking L.J. 92, 102 (February 1998).

Except in limited circumstances, *see, e.g.*, 13 Pa.C.S. § 3411(c), the bank "is obliged to pay the [cashier's check] according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder, or if the issuer signed an incomplete instrument, according to its terms when completed...." 13 Pa.C.S. § 3412. In fact, if a bank wrongfully refuses to pay a cashier's check that it issued, then the bank exposes itself to liability in the form of expenses, loss of interest, and even consequential damages. 13 Pa.C.S. § 3411. Based on the heightened obligation that a bank incurs in issuing a cashier's check, payees of these checks are alleviated from the dangers associated with accepting other, riskier methods of payment, such as personal checks. *See*, Landy, *supra* at 96-101. Consequently, when a purchaser conveys his or her funds to bank for a cashier's *453 check, in exchange for the funds paid, the purchaser receives a unique product, *i.e.*, a check that the bank is obligated to pay, assuring payees of these checks of the availability of the funds represented on the checks. *See, id.* at 101.

**9 This type of transaction is akin to other types of sales transactions where purchasers relinquish ownership of funds in return for an interest in a good. *See,* 13 Pa.C.S. § 1201 (providing for the definitions of "purchaser" and "purchase," as the words are used in the various Articles of the Uniform Commercial Code). [FN2] Accordingly, if a garnishee bank never deposits a defendant purchaser's funds into an account managed by the defendant but, rather, exchanges a cashier's check for funds conveyed by the purchaser, then the instant that the bank receives the funds from the defendant, the funds immediately become the property of the bank, and the cashier's check becomes the property of the purchaser. While it is true that a bank exercises dominion over the funds that a purchaser of a cashier's check conveys to the bank, this is simply because, upon receipt of the funds, the bank obtains unfettered ownership of the funds. Thus, in such a scenario, the bank does not possess the defendant's property as contemplated by Pa.R.C.P. 3101(b).

> FN2. Section 1201(a) defines "purchaser" as "[a] person who takes a purchase[,]" and Section 1201(b) defines "purchase," in pertinent part, as "[i]ncludes taking by sale ... or any other voluntary transaction creating an interest in the property."

Contrary to this view, the Majority proposes that when National City came into physical possession of Herzog Brother's cash and checks, "[t]he Bank then had the power to control Herzog Brother's access to those funds and the manner in which the funds were disbursed." Majority Op. at 633, 863 A.2d at 446. This simply is not the case. Under the Majority's rationale, a bank could hold out to a purchaser that it is unconditionally willing to accept the purchaser's funds for the immediate exchange of a cashier's check; however, upon receiving the purchaser's funds, the bank would have no

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



863 A.2d 443
(Cite as: 863 A.2d 443, *453, 2004 WL 2951992, **9 (Pa.))

Page 9

obligation to fulfill its end of the bargained for exchange--to provide the purchaser with a cashier's check. This result is not only absurd, see, Pa.R.C.P. 128(a); it is tantamount to authorizing fraudulent inducement. Moreover, a garnishee has a "general duty to act with reasonable care and to take no steps that would unfairly prejudice the judgment debtor. In addition, the garnishee must act in good faith and exercise a high degree of care to protect the rights of all parties." See generally 13 Standard Pennsylvania Practice 2d at 77:39 (explaining garnishees' general duties owed to defendants)(footnotes omitted). If a garnishee bank conducted business with a defendant in the manner forwarded by the Majority, then the bank most certainly would be breaching these general duties. Based on the legal analysis provided above, I find that a garnishee bank does not possess the property of a defendant as contemplated by Pa.R.C.P 3101(b) when a defendant purchaser buys a cashier's check from a garnishee bank with funds that are never deposited in the defendant's account. [FN3]

> FN3. The fact that National City did not deposit the funds Herzog Brothers conveyed to the bank into an account managed by Herzog Brothers prior to the bank issuing the cashier's checks is precisely what distinguishes the legal analysis employed by the Eighth Circuit in In re Southwestern Glass Co., 332 F.3d 513 (8th Cir.2003) from the proper legal analysis that the matter sub judice requires. Witco and the Majority rely on Southwestern Glass for the proposition that no matter how briefly a garnishee bank possesses a judgment debtor's funds, the instant the funds come into the bank's possession, the bank is obligated to hold the funds for the judgment creditor. As the Majority relates, in Southwestern Glass, the garnishee bank extended a line of credit to the judgment debtor and allowed the judgment debtor to draw checks on this line of credit. Id. at 517. However, this arrangement required the funds to flow through an account managed by the judgment debtor. Id. While the funds remained in the line of credit, they were not subject to garnishment; however, the instant that the funds were transferred into the judgment debtor's account, the judgment debtor obtained an ownership interest in the funds. Id. at 518. Although the transferred funds only briefly passed through the judgment debtor's account, the Eighth Circuit determined that for the brief time that the funds were in the judgment debtor's account, the funds belonged to the judgment debtor, and therefore, the judgment creditor's writ of garnishment captured these funds.
> In the matter sub judice, the funds conveyed by Herzog Brothers were never deposited into a personal account. Rather, the bank issued the cashier's checks immediately upon receipt of Herzog Brothers' funds. Therefore, the bank never possessed these funds as contemplated by Pa.R.C.P. 3101(b), and the funds, consequently, could not be captured by Witco's writ of garnishment.

*454 Turning to the second question posed by the Third Circuit, the court asks whether a garnishee bank that receives "possession" of a judgment debtor's property has a duty under Pa.R.C.P. 3111(c) to restrain from paying any "debt" to the judgment debtor in exchange for that property, even if that "debt" arises during a transaction with a brief duration akin to that of a sales transaction. Pursuant to Pa.R.C.P. 3111(c), a garnishee bank that receives "possession" of a defendant's property would be restrained from paying a debt to or on the account of the debtor with that property. For the reasons stated above, however, a bank does not come into possession of a defendant purchaser's property, as contemplated by Pa.R.C.P. 3101(b), by engaging in the sale of a cashier's check. Therefore, because a garnishee bank never takes possession of a defendant's property when the bank sells a cashier's check to the defendant, a garnishee bank cannot possibly pay a debt to or for the account of the defendant with the defendant's property as a result of such a transaction. As such, selling a cashier's check to a defendant purchaser does not trigger a garnishee bank's duties under Pa.R.C.P. 3111(c).

**10 Lastly, the Third Circuit asks whether the public policy underlying Pennsylvania garnishment law requires a garnishee bank to refrain from engaging in transactions with a judgment debtor when doing so permits the judgment debtor to avoid the garnishment of its assets, particularly when engaging in such transactions is to the financial benefit of the bank. This Court has stated that "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." Hall v. Amica Mutual Insurance Co., 538 Pa. 337, 648 A.2d 755, 760 (1994). The laws of this Commonwealth allow for the garnishment of many types of arrangements between a judgment debtor and a garnishee. See, e.g., 23 Pa.C.S. § 3502(e)(8)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



863 A.2d 443
(Cite as: 863 A.2d 443, *454, 2004 WL 2951992, **10 (Pa.))

Page 10

(allowing for the attachment of wages when a party to a court order of equitable distribution fails to comply with the order); and Pa.R.C.P. 3101(b)(3) (stating that a fiduciary who holds property, in which the defendant has an interest, possesses the defendant's property and, therefore, has property subject to a writ of garnishment). These laws contemplate that in order for a writ of garnishment to capture funds or property of a defendant being held by a third-party garnishee, the garnishee must either owe a debt to the defendant or actually possess the property of the defendant. *See* Pa.R.C.P. 3101(b). These laws do not, however, suggest that a writ of garnishment should capture a defendant's funds when the defendant engages in the purchase of a cashier's check, *455 a transaction akin to that of other sales transactions. Accordingly, because our laws governing garnishment do not contemplate the garnishment of funds exchanged in such scenarios, the public policy of this Commonwealth is not offended by such an exchange and, therefore, does not require a garnishee from refraining from engaging in such transactions, regardless of whether the garnishee profits from such transactions.

For all the reasons above, I dissent.

--- A.2d ----, 863 A.2d 443

Briefs and Other Related Documents (Back to top)

. 2004 WL 1469276  (Appellate Brief) Reply Brief of Appellant (Apr. 08, 2004)Original Image of this Document (PDF)

. 2004 WL 1469275  (Appellate Brief) Brief for Appellee, National City Bank (Mar. 26, 2004)Original Image of this Document (PDF)

. 2004 WL 1469274  (Appellate Brief) Brief of Appellant (Feb. 23, 2004)Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

