IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WITCO CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) Misc. No. 96-75 Erie |
| HERZOG BROTHERS TRUCKING INC., | ) |
| Defendant, | ) |
| v. | ) |
| NATIONAL CITY BANK OF PENNSYLVANIA, | ) |
| Garnishee. | ) |

**MEMORANDUM OPINION**

McLAUGHLIN, J.

Presently pending in this Court is a pleading styled "Second Motion to Compel Payment." [Doc. No. 11]. In this motion, Plaintiff Witco Corporation ("Witco") asserts that Garnishee National City Bank of Pennsylvania ("National City") violated its garnishment orders when, subsequent to being served with a Writ of Execution designating it as a garnishee of the Defendant, Herzog Brothers Trucking Incorporated ("Herzog Brothers"), it issued more than $6,000,000 in "official checks" to payees designated by the Defendant. National City has answered this motion and denies that it actions were improper [Doc. No. 17]. We will construe the parties' motions as cross-motions for summary judgment and, for the reasons set forth below, will deny Witco's motion and enter summary judgment in favor of National City.

**I. BACKGROUND**

Herzog Brothers' primary business is the wholesale distribution of motor fuel products. In a previous action brought before this Court, Witco obtained a default judgment against Herzog Brothers in the amount of $509,216.52 plus costs. Judgment in Civil Action No. 96-110 Erie, Witco Corporation v. Herzog Brothers, Ex. A to Witco's Motion. In connection with this action, a Writ of Execution was issued to National City as garnishee. National City thereafter indicated

EXHIBIT A

in response to interrogatories that it held, and had frozen pursuant to the garnishment order, $1,379.52 in a checking account of Herzog Brothers. Answer to Interrogatory #1 by National City, Ex. B to Witco's Motion at 2.

Witco then deposed Gary Herzog, President and sole shareholder of Herzog Brothers, and learned that subsequent to the service of the writ but before an entry of judgment against National City, Herzog Brothers repeatedly purchased cashiers' checks from National City with personal checks and cash. Deposition of Gary Herzog, Ex. A to Memorandum of Law in Support of Motion to Compel Payment [Doc. No. 14 in Civil Action No. 96-110 Erie] at 16. Mr. Herzog presented the personal checks and cash and directed the payees and the amounts of the cashiers' checks on each occasion. Between July 5, 1996 and August 11, 1997, National City issued at least 131 cashiers' checks in this manner, collectively worth more than $6,000,000.

After deposing Mr. Herzog, Witco filed its first "Motion to Compel Payment" in the original action. [Doc. No. 8 in C.A. No. 96-110 Erie]. Following oral argument held on May 5, 1998, this Court denied the motion without prejudice pending a 60-day period of discovery. [Doc. No. 17 in C.A. No. 96-110 Erie]. Witco completed the depositions of three National City employees on October 26, 1998, but failed to reassert its position in any form before this Court until it filed the presently pending "Second Motion to Compel Payment" [Doc No. 11] on July 12, 2001. It does not appear that any other significant discovery was conducted prior to the filing of the second motion.[1]

The details of the cashiers' check transactions are not in dispute. Mr. Herzog, as representative of Herzog Brothers, on each occasion requested cashiers' checks payable to designated persons or entities in exchange for personal checks payable to Herzog Brothers and

---

[1] Notwithstanding this delay, we will decline National City's invitation to apply the equitable doctrine of laches to bar this action. Under Pennsylvania law, two elements comprise this doctrine: (1) inexcusable delay; and (2) prejudice. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 134 (3d Cir. 2000). It is appropriately used when "'a defendant's position or rights *are so prejudiced* by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him.'" Id. (quoting Jacobs v. Halloran, 551 Pa. 350, 710 A.2d 1098, 1102 (Pa. 1998) (emphasis in original)). The decision to apply the doctrine is reserved to the sound discretion of the District Court. Id. Here, we can discern no prejudice to National City caused by Witco's delay in this matter.

cash he presented. Dep. of Diane Blair, National City teller, at 15. The personal checks were written on accounts held by various banks. For checks written on accounts held by National City, bank employees were able to determine at the time of the transactions whether the checks were covered by sufficient funds; for checks written on other banks' accounts, however, bank employees were not able to determine whether sufficient funds existed until the checks were processed at a later time. *Id.* at 16. Notwithstanding this fact, as a courtesy specially offered to Mr. Herzog, National City waived its requirement that personal checks used to purchase cashiers' checks be deposited and cleared prior to the issuance of the cashiers' checks. *Id.* Additional allowances made for Mr. Herzog included waivers of the standard fees assessed for cashiers' checks and the requirement that cashiers' checks be for no less than $1000. These courtesies had been extended to Mr. Herzog well before the Writ of Execution was served on National City. Blair Dep. at 17.

We have jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 69 provides in relevant part that:

> . . . [t]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held . . .

Fed.R.Civ.P. 69. The Pennsylvania Rules of Civil Procedure, however, do not provide for a "Motion to Compel Payment." *Orie v. Stone*, 411 Pa. Super. 481, 601 A.2d 1268, 1271 (Pa. Super. 1992) (noting that the rules provide for no such motion and construing a pleading styled as such as a motion for judgment on the pleadings). Pertinently, however, Pennsylvania Rule 3145(a) provides that "[t]he procedure between the plaintiff and the garnishee shall, as far as practicable, be the same as though the interrogatories were a complaint and the answer of the garnishee were an answer in a civil action." Pa.R.C.P. 3145(a). Pennsylvania Rule 3117 further provides that discovery in aid of execution may be taken at any time after judgment is entered. Pa.R.C.P. 3117. In light of these rules, we will construe Witco's "Second Motion to Compel Payment" and National City's response thereto as cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. We note that the parties have agreed that there are no disputed issues of material fact in this matter. Hearing on Second Motion to Compel Payment

Held on August 7, 2001 at 11.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. *Knabe v. Boury Corp.*, 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita*, 475 U.S. at 587).

### III. DISCUSSION

"Garnishment is a proceeding wherein the judgment creditor seeks to determine whether the garnishee owes a debt to the judgment debtor, or has property of the judgment debtor in his possession." *Wheatcroft v. Smith*, 239 Pa.Super. 27, 362 A.2d 416, 419 (Pa. Super. 1976). In Pennsylvania, the garnishment proceedings begin with the service of a Writ of Execution and interrogatories, the latter of which are used to determine whether the suspected debt exists. *Id.* The Writ of Execution itself is prospective in effect; it attaches property that is in the possession of the garnishee at the time of service as well as property that "comes into the garnishee's possession thereafter . . ." until judgment is entered against the garnishee. Pa.R.C.P. 3111(b).

The narrow issue presented in this case is whether National City came into the possession of Herzog Brothers' property when it conducted the cashiers' check transactions. Because the Pennsylvania Supreme Court has not addressed this issue, our task is to predict what the Court would do if it were faced with it. *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1264 (3d Cir. 1991). The relevant statutory provision is Pennsylvania Rule of Civil Procedure 3101(b), which provides in pertinent part that:

> (b) [a]ny person may be a garnishee and shall be deemed to have possession of the property of the defendant if he
>
> (1) owes a debt to the defendant; [or]
> (2) has property of the defendant in his custody, possession or control

Pa.R.C.P. 3101(b).

Witco asserts that National City came into possession of Herzog Brothers' property in either or both of these senses. Its arguments on both points turn on the details of the counter transactions. Concerning Pa.R.C.P. 3101(b)(1), Witco contends that the bank became indebted to Herzog Brothers on each occasion that it accepted its personal checks and cash because this property was not given to it gratuitously. Thus, Witco asserts, National City repaid the debts it incurred when it accepted the property, and violated its obligations as a garnishee, when it issued the cashiers' checks Herzog requested.

We have substantial difficulty accepting the seemingly unlimited definition of "debt" this argument presupposes. The transactions at issue are not unlike any number of sales transactions in which the purchaser tenders the full amount due at the time of sale. In each instance, Herzog Brothers purchased cashiers' checks with personal checks and cash. Cashiers' checks are negotiable instruments that a bank draws upon itself. *Da Silva v. Sanders*, 600 F.Supp. 1008, 1010 (D.D.C. 1984). In the commercial world, they are widely accepted as the equivalent of cash because banks rather than individuals stand behind them. *Id.* at 1013; *see also Metal Marketplace, Inc. v. United Parcel Service, Inc.*, 733 F.Supp. 976, 979 (E.D. Pa. 1990).

In the unique instances at issue, National City did not require the personal checks presented by Mr. Herzog to be deposited and cleared prior to the issuance of the cashiers' checks. Rather, it accepted these very checks as payment for the cashiers' checks. Although this was admittedly an exception made for Mr. Herzog, it is an important fact. "Ordinarily, where a party deposits funds in a bank, the funds become the property of the bank and the bank becomes the debtor of the depositor." *In re Tonyan Construction Co.*, 28 B.R. 714, 725 (Bankr. N.D. Ill. 1983) (*citing United States v. Butterworth-Judson Corp.*, 267 U.S. 387, 394 (1925)); *see also Pennsylvania Title and Trust Co. v. Real Estate Loan and Trust Co.*, 201 Pa. 299, 50 A. 998 (Pa. 1902). Here, however, a debt in this traditional sense did not arise because Herzog Brothers never deposited the funds used to purchase the cashiers' checks.

Having concluded that the cashiers' check transactions at issue are not analogous to the withdrawal of funds from a bank account and did not otherwise give rise to a debt owing from National City to Herzog Brothers, we have no difficulty further concluding that any fleeting obligation owed by National City to Herzog Brothers between the commencement and the conclusion of each transaction did not constitute a "debt" for purposes of attachment. A debt may be: (1) liability on a claim; a specific sum of money due by agreement or otherwise; (2) the aggregate of all existing claims against a person, entity or state; (3) a nonmonetary thing that one person owes another, such as goods or services; or (4) a common-law writ by which a court adjudicates claims involving fixed sums of money. BLACK'S LAW DICTIONARY (7th ed. 1999). Pennsylvania courts have held that a tenant who owes rent to a judgment debtor and an insurer who has been found liable to an insured judgment debtor but who has not yet paid over the proceeds of the policy can be garnishees. *Colbassani v. Soc. of Christopher Columbus*, 159 Pa.Super. 414, 48 A.2d 106, 107 (Pa.Super. 1946); *Brown v. Candelora*, 708 A.2d 104, 107 (Pa.Super. 1998). In contrast, in *Seip v. Laubach*, 333 Pa. 225, 4 A.2d 149, 150 (Pa. 1939), the Pennsylvania Supreme Court held that a bank that held mortgage notes as security for a debt could not be made a garnishee when the mortgagors themselves were not made garnishees. The Court stated that the:

> . . .mortgage held by another as security for a debt is not subject to attachment execution unless the mortgagor is summoned as garnishee; [] the mortgage is a mere chose in action secured by land, and in order to effect an attachment 'the defendant's debtor, and not the person who holds the evidence of indebtedness, must be made the garnishee.'

(internal citations omitted).

We recognize that the property at issue in this case differs from the mortgage bonds at issue in *Seip*. Nonetheless, we find that the cases as a whole support our conclusion that National City is not an appropriate garnishee under the debt theory of possession. Witco's posited interpretation, which would seemingly designate every sales transaction or exchange as an occurrence in which a debt arises, is far broader than that which has been employed to date and obscures the true nature of the cashiers' check transactions. Accordingly, we find that National City did not violate the Pennsylvania garnishment law by paying a debt either to or for the account of Herzog Brothers when it issued the cashiers' checks. Pa.R.C.P. 3111(c).

We also find that National City did not come into the possession of Herzog Brothers' property in the second sense argued by Witco, that of "custody, possession, or control." Pa.R.C.P. 3101(b)(2). Witco asserts in its brief on this point that National City came into the possession of Herzog Brothers' personal checks and cash at the moment Herzog presented these funds to the bank. Memorandum of Law in Support of Witco's Motion at 7-8. Witco contends in the alternative that even if these funds are deemed to have immediately become the property of National City, the bank was then in possession of Herzog Brothers' cashiers' checks until it gave them to Herzog. *Id.* at 8. Witco argues that while holding Herzog Brothers' funds, National City possessed them just as it possessed the funds in the Herzog Brothers' checking account. *Id.* at 7-8.

As we have already discussed, however, the transactions at issue are not analogous to the withdrawal of funds from a bank account. It is furthermore clear that Witco's assertion that National City possessed Herzog Brothers' property merely because this property came into the bank's tellers' hands during the transactions is overly simplistic. In *Decatur Contracting v. Belin, Belin & Naddeo*, 898 F.2d 339, 344 (3d Cir. 1990), the Court of Appeals for the Third Circuit held in construing the Pennsylvania garnishment law that a judgment debtor's attorney who was entitled to the debtor's property "possessed" it even though it was not in his hands. The Court stated that:

> The . . . [court] order gave Belin [the judgment debtor's attorney] control over the property. He could have immediately gone to the Prothonotary, presented the court's order and demanded that the Prothonotary turn over the money to him. Thus, under [Pennsylvania] Rule 3101(b), Belin "possessed" the property at the time the writ was served.

*Id.* Here, therefore, the question is not whether Herzog Brothers' property was ever placed in the hands of National City's tellers. It clearly was. Rather, the relevant inquiry is whether National City ever exercised sufficient dominion or discretion over this property that it can be said to have had "custody, possession or control" over it.

The Pennsylvania statute does not define these terms, although their general definitions are instructive. "Custody" is the care and control of property for inspection, preservation or security. BLACK'S LAW DICTIONARY (7th ed. 1999). "Control" is the power to direct the policies and management of a thing; it the "power to manage, direct or oversee." *Id.* "Possession" may

-7-

be the "fact of having or holding property in one's power; the exercise of dominion over property," or the "right under which one may exercise control of something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object." *Id.* An attorney who holds the funds of a judgment debtor is deemed to be in possession of the funds, and a registered owner of securities is deemed to be in possession of them even when they are actually owned by another. 13 Standard Pa. Prac. 2d § 77.19 (1996).

These definitions and examples make it clear that the "possessor" of property must have some ability to exercise dominion or control over it. In the transactions at issue, as discussed above, National City was no more than a seller or exchanger. On each occasion, Herzog initiated the transactions. He brought the property to the bank and determined the amounts and payees of each cashier's check. Herzog did not relinquish the property to National City so that the bank could manage it or direct it. He also did not give the bank the exclusive right to control the property. Fundamentally, it was Herzog, and not National City, who had the ability to and in fact did determine that the property would be used to purchase cashiers' checks. Furthermore, like its proposed interpretation of a debt, Witco's argument that National City possessed Herzog Brothers' funds because it received them as payment is seemingly limitless. Witco has provided no support for this exceptionally broad understanding of the Pennsylvania garnishment law. Accordingly, we find that National City did not have "custody, possession or control" over Herzog Brothers' funds.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WITCO CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) |
| HERZOG BROTHERS TRUCKING INC., | ) Misc. No. 96-75 Erie |
| Defendant, | ) |
| v. | ) |
| NATIONAL CITY BANK OF PENNSYLVANIA, | ) |
| Garnishee. | ) |

## ORDER

AND NOW, this 3rd day of April, 2002, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED THAT Wtico's Motion for Summary Judgment [Doc. No. 11] is DENIED and National City's Motion for Summary Judgment [Doc. No. 17] GRANTED.

The Clerk is directed to mark this case CLOSED.

_____
Sean J. McLaughlin
United States District Judge

cm: All parties of record. _____